ALTENBERND, Judge,
Concurring.
I fully concur in this opinion. I write only to question the sovereign immunity ramifications that appear to underlie the arrangement between the emergency room physicians at Winter Haven Hospital and UFBOT. If the University of Florida is essentially selling its sovereign immunity for profit to physicians and hospitals that do not otherwise possess sovereign immunity, this is a practice that should be carefully examined.
Like many hospitals, Winter Haven Hospital is not a governmental entity. It is a not-for-profit corporation. Such corporations have never had sovereign immunity in Florida.[3] Moreover, the doctors and nurses who work in these hospitals do not generally have any sovereign immunity protection. Thus patients at not-for-profit hospitals who believe that they have been the victims of medical malpractice are generally entitled to sue the hospital, the doctors, and the nurses without the restrictions that limit lawsuits against governmental entities.
UFBOT has essentially taken over the professional staffing of physicians in the emergency room at Winter Haven Hospital. In so doing, UFBOT has apparently transformed the emergency room doctors into government employees for purposes of section 768.28(9)(a). The practical effect of this change in employment status is that the doctors are no longer personally liable for their ordinary medical negligence. Instead, liability for their errors is now protected by the restrictions of sovereign immunity, including the $100,000 limitation per person contained in section 768.28(5) that can only be overcome if the legislature orders UFBOT to pay a larger amount.
As this appeal demonstrates, UFBOT also argues that this new contractual arrangement requires that claims arising from the treatment of these emergency room doctors be litigated in Alachua County. If this were the law, a medical malpractice claim by a Polk County resident involving both a typical treating physician or hospital nurse in Winter Haven and an emergency room physician at Winter Haven Hospital would proceed against the treating physician or hospital nurse as a claim in the Polk County Circuit Court subject only to the restrictions common to all medical malpractice claims under chapter 766, Florida Statutes. If the Polk County resident had sufficient resolve to bring an additional claim against the emergency room physician, that claim would *498 proceed only against UFBOT in a separate suit, subject to all sovereign immunity restrictions, in Alachua County.
Sovereign immunity in England was originally based on the notion that “the king can do no wrong.” Am. Home Assurance Co. v. Nat’l R.R. Passenger Corp., 908 So.2d 459, 471 (Fla.2005). It has never been a doctrine of the common law that translated well to the governance of a democratic republic. Limitations on governmental liability for the torts of government employees may occasionally be necessary to assure the proper functioning of government, but these limitations are often inconsistent with the general rules we use to assure that businesses and professionals in a free market economy actually cover the foreseeable indirect costs that their economic activities generate within our society. See Pagan v. Sarasota County Pub. Hosp. Bd., 884 So.2d 257, 260 (Fla. 2d DCA 2004) (expressing concern about an effort by a nonprofit corporation controlled by a government hospital board to extend sovereign immunity to private physicians).
It is obviously more economic to run any business or profession if one has limited liability. It is easier to compete with other businesses or professionals if one can avoid the costs and liabilities that the competitor cannot avoid. The idea that the government can now enter into favorable leases and contracts based at least in part on the government’s ability to expand its umbrella of sovereign immunity to favor some private enterprises over others is an idea that warrants very close scrutiny.

. See § 617.0302(2), Fla. Stat. (2006); Fritsch v. Rocky Bayou Country Club, Inc., 799 So.2d 433, 435 (Fla. 1st DCA 2001) (stating a not-for-profit corporation “is subject to suit 'in its corporate name to the same extent as a natural person’ ”).